IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
EASTERN DIVISION

| | |
|---|---|
| LEO K. and DONNA K., individually and on behalf of M.L.K., | |
| Plaintiffs, | Case No. 2:24-cv-1625 |
| v. | Magistrate Judge Nancy Joseph |
| ANTHEM BLUE CROSS BLUE SHIELD, CASE NEW HOLLAND INDUSTRIAL INC., and the CNH INDUSTRIAL U.S. HEALTH AND WELFARE PLAN, | |
| Defendants. | |

**DEFENDANTS' MOTION TO DISMISS**
**AND SUPPORTING MEMORANDUM OF LAW**

Robert C. Deegan (IL # 6289338)
REED SMITH LLP
10 South Wacker Drive, Suite 4000
Chicago, IL 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400
redeegan@reedsmith.com

*Attorney for Defendants*

Defendants Anthem Insurance Companies, Inc., doing business in Wisconsin as Blue Cross and Blue Shield of Wisconsin ("BCBSWI"), CNH Industrial America LLC (incorrectly named as Case New Holland Industrial Inc.) ("CNH"), and CNH Industrial U.S. Health and Welfare Benefit Plan (the "Plan"), hereby moves to dismiss Plaintiffs Leo K. and Donna K.'s ("Plaintiffs'") Complaint ("Complaint") (ECF No. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

I.  INTRODUCTION

In Count I of Plaintiffs' two-count Complaint, Plaintiffs allege that BCBSWI violated Section 502(a)(1)(B) of the Employment Retirement Security Act ("ERISA") by denying coverage under their health benefits plan for services for Leo and Donna K.'s minor son, M.L.K, received from Blue Ridge Therapeutic Wilderness ("Blue Ridge"), an outdoor-based wilderness program. Plaintiffs fail to state a plausible claim for relief under Count I because Plaintiffs' Plan does not include, and expressly excludes coverage for the services at issue. ERISA only allows Plaintiffs to recover benefits due under the terms of his plan (*see* 29 U.S.C. § 1132(a)(1)(B)). As a result, the Court should dismiss Plaintiffs' claim for benefits under ERISA.

In Count II, Plaintiffs allege that BCBSWI's denials of benefits violated ERISA by imposing limitations on mental health benefits (including wilderness therapy) that are not imposed on allegedly analogous medical/surgical benefits, purportedly in violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"). Plaintiffs assert that BCBSWI violated MHPAEA by imposing more restrictive treatment criteria for mental health treatment compared to medical/surgical treatment. Plaintiffs' MHPAEA claim fails for three primary reasons. First, Plaintiffs' MHPAEA claim fails because BCBSWI's wilderness program exclusion applies both to medical/surgical services and mental health services equally. Second, Plaintiffs rest much of their MHPAEA challenge on allegations related to overly restrictive terms that are not contained

in Plaintiffs' Plan and those terms are contradicted by the actual terms of their Plan. Third, Plaintiffs' claim under MHPAEA for a violation of the non-quantitative treatment limitations ("NQTL") rules under MHPAEA fails because Plaintiffs' challenges to the Plan have no nexus to the benefits determination BCBSWI made in this case. Specifically, BCBSWI did not make any medical necessity determination on Plaintiffs' claims and instead denied Plaintiffs' claims because the wilderness program service that Blue Ridge provides is excluded from coverage. Plaintiffs fail to allege any MHPAEA violation and Count II should be dismissed.

Because Counts I and II fail as a matter of law, BCBSWI respectfully requests that the Court dismiss the Complaint in full.

## II. RELEVANT ALLEGED FACTS[1]

### A. The Plan Provides Coverage for Certain Enumerated Services and Facilities.

At all relevant times, Leo K. was a participant in the Plan and M.L.K. was a beneficiary. Compl. ¶ 4. The Plan is a self-funded employee welfare benefits plan. Compl. ¶ 6; *see also* Medical Benefits Booklet for Case New Holland, attached as Exhibit A at 2.[2]

Plaintiffs allege that M.L.K. attended Blue Ridge from February 1, 2021 to May 13, 2021 Compl. ¶ 11. The Plan covers services that are "a service and supply specified in this benefit booklet for which benefits will be provided." Ex. A at 15 ("Covered Services"). The Plan excludes "[a]ny item, service, supply or care not specifically listed as a Covered Services in this Benefit

---

[1] BCBSWI assumes Plaintiffs' factual allegations are true solely for purposes of this Motion to Dismiss, and not for any other purpose.

[2] In evaluating a Rule 12(b)(6) motion, courts may consider documents, like the Plan, that are incorporated in the complaint by reference. *Bolden v. Wells Fargo Bank, N.A.*, No. 14 C 403, 2014 WL 6461690, at *1 n.2 (N.D. Ill. Nov. 18, 2014) ("[w]here a document is referenced in the complaint and central to plaintiff's claims . . . the Court may consider it in ruling on the motion to dismiss."). The Rickards Declaration is submitted with this Memorandum of Law for purposes of authenticating the Plan.

Booklet" and provides that "[n]o benefits are available for services that are not specifically described as Covered Services in this Benefit Booklet." Ex. A at 51, 52. The Plan requires that "[a]ll Covered Services must be medically necessary[.]" Ex. A at 22; Compl. ¶ 20.

Covered Services for Behavioral Health and Substance Abuse Treatment include ABA Therapy; Inpatient Services provided in a hospital; Residential Treatment in a licensed Residential Treatment Center; Outpatient Services including office visits, therapy and treatment, Partial Hospitalization/Day Treatment Programs, and Intensive Outpatient Programs Network (when available in Your area) Intensive In-Home Behavioral Health Programs; and Online Visits. Ex. A at 35.[3] Under the Plan's terms:

> Residential Treatment Center/Facility [is a]] Provider licensed and operated as required by law, which includes:
> - Room, board and skilled nursing care (either an RN or LVN/LPN) available on site at least eight hours daily with 24 hours availability.
> - A staff with one or more Doctors available at all times.
> - Residential treatment takes place in a structured Facility-based setting.
> - The resources and programming to adequately diagnose, care and treat a psychiatric and/or substance use disorder.
> - Facilities are designated residential, subacute, or intermediate care and may occur in care systems that provide multiple levels of care.
> - Is fully accredited by The Joint Commission (TJC), the Commission on Accreditation of Rehabilitation Facilities (CARF), the National Integrated Accreditation for Healthcare Organizations (NIAHO), or the Council on Accreditation (COA).
>
> The term Residential Treatment Center/Facility does not include a Provider, or that part of a Provider, used mainly for:
> - Nursing care
> - Rest care
> - Convalescent care
> - Care of the aged
> - Custodial care
> - Educational care

*See id*. at 95 (emphasis added).

---

[3] Under the Plan, Behavioral Health Care includes Mental Health and Substance Abuse Treatment. Ex. A at 85.

The Plan does not cover "Mental Health or Substance Abuse Treatment, unless otherwise specified as covered in the Benefits Booklet." Ex. A at 49. The Plan also excludes "[s]ervices for outpatient therapy or rehabilitation other than those specifically listed as covered in this Benefit Booklet." Ex. A at 57. "Excluded forms of therapy include, but are not limited to, primal therapy, chelation therapy, Rolfing, psychodrama, megavitamin therapy, purging, bioenergetic therapy, in-home wrap around treatment, wilderness therapy and boot camp therapy." *Id.*

BCBSWI denied coverage for M.L.K.'s treatment at Blue Ridge because, as this exclusion demonstrations, the Plan does not cover wilderness programs. Compl. ¶¶ 13, 45. M.L.K. appealed, alleging that Blue Ridge was a "provider" under the Plan and therefore was covered. *Id*. ¶ 23. In its letter upholding its denial, BCBSWI explained "this service is excluded or not covered[,]" and quoted the language from the General Exclusions section of Plaintiffs' benefits booklet excluding "outpatient therapy services not covered, including primal therapy, chelation therapy, rolfing, psychodrama, megavitamin therapy, purging, bioenergetic therapy, in-home wrap around treatment, wilderness therapy and boot camp therapy." *Id.* ¶¶ 44-45. Plaintiffs submitted a second appeal. *Id.* ¶ 47. BCBSWI upheld its prior benefit determination. *Id.* ¶ 58.

Plaintiffs filed their two-count Complaint on June 14, 2024. In Count I, brought pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B), Plaintiffs seek to recover benefits for M.L.K.'s stay at Blue Ridge. *Id*. ¶¶ 73-79. In Count II, Plaintiffs demand relief under § 1132(a)(3) for violations of MHPAEA. *Id*. ¶¶ 80-94. Count II alleges that Defendants applied a "Medical Necessity Restriction" only to Behavioral Health Services, in violation of MHPAEA. Compl. ¶¶ 87-89. Under Count II, Plaintiffs allege that "[t]he only Medical Necessity restriction imposed by the Plan on medical/surgical Inpatient Services is a private room vs. a semi-private room." Compl. ¶ 87. As relevant, the Benefits Booklet, under the section for all Covered Services states that "[i]f a Member

stays in a private room, this Plan pays the Semiprivate Room rate toward the charge of or the private room." Ex. A at 47. Plaintiff also alleges that:

> "[b]y contract Plan exclusions for Behavioral and Mental Health Disorders and Substance Abuse include:
> • Treatment or care that is not considered Medically Necessary or appropriate, as determined by the Plan;
> • Inpatient charges for the period of time when full, active Medically Necessary treatment for the Covered Person's condition is not provided;
> • Residential Treatment service;
> • Room and board charges unless the treatment provided meets the Plan's Medical Necessity criteria for Inpatient admission for your condition;
> • Services or care provided or billed by a residential treatment center, school halfway house, Custodial Care center for the developmentally Disabled, residential treatment program for drug and alcohol, or outward bound programs, even if psychotherapy is included; and
> • Conditions listed in the most recent American Psychiatric Association Diagnostic and Statistical Manual in the following categories: organic psychotic disorders; personality disorders; sexual/gender identity disorders; behavior and impulse control disorders; or "V" codes.

Compl. ¶ 88. Plaintiff does not allege BCBSWI utilized these exclusions to deny Plaintiffs' claims for benefits. *See* Compl. These "exclusions," however, do not appear in Plaintiffs' Plan, which was the Plan governing their request for services and which BCBSWI used to adjudicate their request for coverage. *See* Ex. A.

### III. LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient facts, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges a "possible" claim is insufficient. *Id.* at 679-80 (quoting *Twombly*, 550 U.S. at 570); *see also Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020). "A claim has facial plausibility when the [plaintiff] plead[s] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Forgue v. City of*

*Chi.*, 873 F.3d 962, 966 (7th Cir. 2017) (same). While pleadings are liberally construed on a motion to dismiss, courts only need to accept well-pleaded allegations as true. *Iqbal*, 556 U.S. at 664.

## IV. ARGUMENT

### A. Count I Fail Because Blue Ridge Did Not Provide Covered Services Under the Terms of the Plan.

Plaintiffs' claim for benefits in Count I fails because Plaintiffs have not, and cannot, plead any facts to show that Blue Ridge provided covered services under the Plan. Section 502 of ERISA allows a participant or beneficiary "to recover benefits due to him under the terms of his plan." *See* 29 U.S.C. § 502(a)(1)(B); *Smith v. Health Care Serv. Corp.*, No. 19 C 7162, 2021 WL 963814, at *4 (N.D. Ill. Mar. 15, 2021) ("'[t]he first and critical allegation' of a violation of 1132(a)(1)(B) is that the plaintiff was 'entitled to benefits under the terms of an employee-benefits plan.'") (citing *Brooks v. Pactiv Corp.*, 729 F.3d 758, 764 (7th Cir. 2013)).

Thus, to adequately plead a claim for ERISA benefits, Plaintiffs must "provide the court with enough factual information to determine whether the services were indeed covered services under the plan." *Smith*, 2021 WL 963814 at *4 (citing *LB Surgery Ctr., LLC v. UPS of Am., Inc.*, No. 17 C 3073, 2017 WL 5462180, at *2 (N.D. Ill. Nov. 14, 2017)); *see also J.S. v. Health Care Service Corp.*, No. 1:22-cv-05063, Dkt. 28, at 4 (N.D. Ill. Sept. 18, 2023) (dismissing claim where Plaintiffs make no allegations about services received "besides that it was covered by the Plan"). Here, Plaintiffs fail that to meet that standard.

Blue Ridge is a wilderness program[4] and Plaintiffs concede in their Complaint that the Plan excludes coverage for wilderness therapy. Compl. ¶ 45. Courts routinely dismiss Section 502

---

[4] While Plaintiffs refer to Blue Ridge's services as "outdoor behavioral health" services, courts routinely equate those services with wilderness programs. *See, e.g.*, *A.G. v. Cmty. Ins. Co.*, 363 F.Supp.3d 834, 836 (S.D. Ohio 2019) (dismissing claim for services provided at Blue Ridge despite plaintiff's characterization as an "outdoor therapy program" because the Plan excluded coverage for wilderness camps). Indeed, Blue Ridge's website – titled "Blue Ridge Therapeutic

- 6 -
Case 2:24-cv-01625-NJ    Filed 01/24/25    Page 7 of 19    Document 31

claims seeking benefits for services provided by wilderness programs where a Plan did not provide coverage for them. *See, e.g.*, *A.G.*, 363 F.Supp.3d at 836; *Roy C. v. Aetna Life Ins. Co.*, No. 2:17cv1216, 2018 WL 4511972, at *2 (D. Utah Sep. 19, 2018) (dismissing claim for benefits because plan expressly excluded wilderness programs); *H.H. v. Aetna Ins. Co.*, 342 F.Supp.3d 1311, 1321 (S.D. Fla. 2018) (same); *A.H. v. Anthem Blue Cross*, No. 22-cv-07660-HSG, 2023 U.S. Dist. LEXIS 97686, at *5 (N.D. Cal. June 5, 2023) (same). The Court should, accordingly, dismiss Count I.

To avoid this result, Plaintiffs claim Blue Ridge should have been covered nonetheless because Blue Ridge satisfies the Plan's definition of "Provider." Compl. ¶ 22. However, a "Provider" is not a service covered by the Plan. Ex. A at 34-37.[5] Plaintiffs benefits booklet is clear that members must "receive Covered Services" to be eligible for reimbursement, and Plaintiffs do not plead any facts that establish that Blue Ridge provides any of the Plan's Covered Services.[6] Ex. A at 35. Their claim for benefits fails, as a result. *See generally*, Compl.; *see also A.H.*, 2023 U.S. Dist. LEXIS 97686, at *5 (dismissing claim for benefits where plaintiff failed to allege wilderness facility is covered treatment center under the plan).

---

Wilderness" – advertises "highly individualized wilderness therapy programs." *Blue Ridge Wilderness*, https://blueridgewilderness.com/ (last visited January 20, 2025).

[5] As Plaintiffs' benefits booklet explains "Providers that deliver Covered Services are described throughout this Benefit Booklet," and offers members the option to call the number on the back of their Identification Card "if You have a question if a Provider is covered." Ex. A at 93.

[6] To the extent Plaintiff argues Blue Ridge is a "Provider from whom [members] can receive Covered Services" as detailed on page 35 of Plaintiffs' benefit booklet, these are licenses to be held by individuals, not entities, with the exception of a state agency, which Blue Ridge is not. Further, *can*, is the operative word. If an L.P.C. provides a non-covered or excluded service, for example, chelation therapy, it will not be covered.

Plaintiffs also allege in broad stroke that the Plan "promises benefits to Covered Persons for medically necessary treatment of behavioral and mental health disorders and substance abuse." Compl. ¶ 75. This allegation ignores that the Plan excludes Mental Health Treatment unless a Covered Service in the Benefits Booklet. Ex. A at 49. Plaintiffs simply fail to identify or allege any Covered Service Blue Ridge provided, and Blue Ridge was therefore not available for reimbursement. As a result, Plaintiffs' contention that BCBSWI violated the terms of the plan is thus implausible even from the face of the Complaint. *Alice F. v. Health Care Service Corp.*, 367 F.Supp.3d 817, 825-26 (N.D. Ill. 2019) (summary judgment to defendant on similar plan language; wilderness program did not comply with the plan's definition of RTC).

In sum, Plaintiffs fail to plead facts that demonstrate that Blue Ridge provided services in accordance with Plan terms, the Court should dismiss Count I. *See Berk v. Health Care Serv. Corp.*, No. 12 CV 8074, 2014 U.S. Dist. LEXIS 200605, at *15 (N.D. Ill. May 6, 2014) (plaintiff must demonstrate entitlement to benefits under the Plan to survive a motion to dismiss on a claim brought under section 502(a)(1)(B)).[7] Accordingly, the Court should dismiss Count I.

### B. Plaintiffs Fail to Plead a Plausible Violation of MHPAEA.

This Court should dismiss Plaintiffs' MHPAEA claim in their second cause of action for failure to state a claim upon which relief can be granted for four reasons. First and foremost, MHPAEA's rules require comparability between medical/surgical limitations and mental health limitations, and Plaintiffs' Plan treats mental health and medical/surgical claims comparably as a

---

[7] Plaintiffs do allege that Blue Ridge was "duly licensed" in the State of Georgia as an "outdoor child caring program." Compl. ¶ 12. But licensure alone does not meet the Plan's terms as the Plan's licensure and regulatory requirements are required <u>in addition</u> to the remaining requirements for coverage in the Plan. *Alice F.*, 367 F.Supp.3d at 827 (facility met some, but not all of the requirements in the plan's RTC definition and was not covered as a result); *see also Loran K. v. Blue Cross & Blue Shield of Ill.*, No. 19cv07694-JSW, 2021 WL 4924777, at *6 (N.D. Cal. June 17, 2021) (facility's licensure was irrelevant because it failed to comply with remaining requirements in the plan) (unpublished).

matter of law. Second, Plaintiffs' allegations are contradicted by the plain terms of their benefits booklet. Third, Plaintiffs' allegations lack any connection to BCBSWI's benefits determination, and they therefore lack standing to bring a MHPAEA claim. Finally, Plaintiffs' remaining conclusory allegations do not amount to a plausible claim. Therefore, Count II should be dismissed with prejudice.

### 1. MHPAEA's NQTL Rules Require Comparability, Not Equality.

MHPAEA regulates health plans that provide coverage for mental health services, stating that treatment limitations applicable to mental health must be "no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan" and requires that there be "no separate treatment limitations that are applicable only with respect to mental health." 29 U.S.C. § 1185a(3)(A) and 1185(a)(3)(A)(ii). Treatment limitations can be quantitative, such as limits on the number of visits, or nonquantitative. NQTLs "limit the scope or duration of benefits for treatment,'" and include "[r]estrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided." 29 C.F.R. § 2590.712(a)-(c).

Treatment limitation comparisons across mental health and medical/surgical benefits are to be made within discrete benefit "classifications." *See* 29 C.F.R. § 2590.712(c)(2)(ii)(A) ("To the extent that a plan . . . provides benefits in a classification and imposes any . . . treatment limitation . . . for benefits in the classification, the rules of this paragraph (c) apply separately with respect to that classification for all . . . treatment limitations . . . ."). MHPAEA's implementing regulations enumerate six such classifications of benefits: (1) inpatient, in-network; (2) in-patient, out-of-network; (3) outpatient, in-network, (4) outpatient, out-of-network; (5) emergency care; and (6) prescription drugs. *Id.* at 2590.712(c)(2)(i)-(ii)(A). "The [MHPAEA] prohibits disparate

coverage among only treatments that belong in the same classification." *Bushell v. UnitedHealth Grp., Inc.*, 17CV2021 (JPO), 2018 WL 1578167, at *7 (S.D.N.Y. Mar. 27, 2018) (unpublished).

This rule also applies to "intermediate services" that fall between inpatient hospitalization and outpatient care. 78 Fed. Reg. 68240-01, 68247 (2013). The regulations specifically identify skilled nursing facilities and inpatient rehabilitation facilities as treatment analogous to residential treatment facilities under MHPAEA. *Id*. at 68246-47. Thus, "if a plan or issuer classifies care in skilled nursing facilities or rehabilitation hospitals as inpatient benefits, then the plan or issuer must likewise treat any covered care in residential treatment facilities for mental health or substance use disorders as an inpatient benefit." *Id.* at 68247. The regulations do not mention outdoor behavioral health providers. *See, generally, id*.

MHPAEA does not prohibit all NQTLs. *See Welp v. Cigna Health & Life Ins. Co.*, No. 17-80237-CIV, 2017 WL 3263138, at *6 n.11 (S.D. Fla. July 20, 2017) (unpublished). Rather, MHPAEA has incorporated "flexibility" into NQTL requirements which allows health plans "to take into account clinically appropriate standards of care when determining whether and to what extent medical management techniques and other NQTLs apply to medical/surgical benefits and mental health and substance use disorder benefits . . . ." 78 Fed. Reg. at 68245. "[S]ome differences between mental healthcare and medical care can be tolerated under the [MHPAEA] where 'the difference in requirements is not necessarily an improper limitation on mental health care, but recognition of the inherent difference in treatment at [different] facilities.'" *Michael P. v. Aetna Life Ins. Co.*, No. 2:16-CV-00439-DS, 2017 WL 4011153, at *7 (D. Utah Sept. 11, 2017) (unpublished).

There are two ways to show a violation of MHPAEA. In a facial challenge, a plaintiff must demonstrate that there is no comparability between "the processes, strategies, evidentiary

standards, or other factors" in developing and applying the NQTLs that are used for mental health and/or medical/surgical benefits in the classification. 45 C.F.R. § 146.136(c)(4)(i); *Michael M. v. Nexsen Pruet Grp. Med. & Dental Plan*, No. 3:18-cv-00873, 2021 WL 1026383, at *10-11 (D.S.C. Mar. 17, 2021) (unpublished). Alternatively, in an as-applied challenge, a plaintiff must show "that the mental health or substance abuse services at issue meet the criteria imposed by her insurance plan and that the insurer imposed some additional criteria to deny coverage of the services at issue." *H.H. v. Aetna Ins. Co.*, 342 F. Supp. 3d 1311, 1319 (S.D. Fla. 2018); *see also Michael M.*, 2021 WL 1026383, at *10, 14-15. For either type of challenge, a plaintiff "must properly identify, either in the terms of the plan or the administrative record, the relevant treatment limitation supporting that charge." *H.H.*, 342 F. Supp. 3d at 1319 (internal citations omitted). Importantly, Plaintiffs must also conform their allegations to general pleading standards in that they are not allowed to base their allegations on implausible or conclusory allegations. *Roy C.*, 2018 WL 4511972, at *3 (noting that a plaintiff must plausibly allege a disparity in the limitation applicable to medical/surgical services on the one hand and the mental health disorder on the other).

### 2. The Relevant Plan Exclusion Applies Equally to Both Mental Health and Medical/Surgical Conditions And Therefore Plaintiffs' MHPAEA Claim Fails.

There is no MHPAEA violation here because the exclusion BCBSWI applied to deny Plaintiffs' claims applies equally to mental health and medical/surgical services. Specifically, BCBSWI denied Plaintiffs' claim for wilderness therapy on the basis that it was a "non-covered outpatient therapy." Ex. A at 22, 52; Compl. ¶¶ 13, 44, 59. That exclusion is not limited to mental health services in any way, as it appears under the general exclusions section, and includes medical/surgical services.[8] Therefore, there is no MHPAEA violation in connection with

---

[8] For example, rolfing is a type of deep tissue manipulation that aims to relieve tension. Anne deLeeuw, *Rolfing Therapy: Technique, Benefits, and More*, Medical News Today,

BCBSWI's denial of Plaintiff's claim. *C.B. v. Blue Cross*, No. 23-cv-01206, 2024 U.S. Dist. LEXIS 43746, at *3-4 (N.D. Ill. Jan. 9, 2024) (no plausible MHPAEA violation where plaintiff conceded rationale for denial applied to both mental health and medical/surgical services); *Robert B. v. Premera Blue Cross*, No. 20-cv-187, 2023 WL 7282726, at *21 (D. Utah Nov. 3, 2023) ("For causation, a claimant must show a nexus between the allegedly violative language and [the plan administrator]'s decision to deny benefits.") (citation omitted)); *J.W.*, 2022 WL 2905657, at *5 (a plaintiff lacks standing to bring a MHPAEA claim based on reasoning outside of denial letter).

### 3. Plaintiffs' Allegations Fail to State a Claim Under MHPAEA Because They Are Contradicted By The Plan Terms.

In an attempt to conjure a MHPAEA violation, Plaintiffs also allege the Plan improperly imposes medical necessity restrictions and exclusions only on mental health services. Compl. ¶¶ 86-88. A plaintiff's allegations generally are taken as true for the purposes of a motion to dismiss, except when contradicted by an attached or referenced exhibit. *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). Plaintiffs point to a list of challenged "exclusions for Behavioral and Mental Health Disorders and Substance Abuse," Compl. ¶ 88, to support their MHPAEA claim, but these exclusions do not appear anywhere in the Benefits Booklet used by BCBSWI to administer Plaintiffs' claims. Nor

---

https://www.medicalnewstoday.com/articles/rolfing (last visited January 17, 2025). Rolfing can be used to alleviate musculoskeletal pain for a number of conditions such as chronic pain syndrome, sports injuries, herniated discs, muscle aches, and soreness. *Id.* Chelation therapy is a treatment that uses medicine to remove metals in people's blood, and heart disease. Melinda Ratini, *What is Chelation Therapy?*, WebMD, https://www.webmd.com/balance/what-is-chelation-therapy (last visited January 17, 2025). Further, the wilderness program portion of the exclusion can apply to both mental health and physical health conditions. *Peter M. v. Aetna Health & Life Ins. Co.*, 554 F. Supp. 3d 1216, 1227 (D. Utah 2021) (noting wilderness treatment can be used for medical surgical services, including weight management programs, treatment for adolescent long-term childhood cancer survivors, diabetes treatment, and treatment of traumatic brain injuries); *see also A.H. v. Microsoft Corp. Welfare Plan*, No. C17-1889-JCC, 2018 U.S. Dist. LEXIS 94537 (W.D. Wash. June 5, 2018).

do Plaintiffs allege BCBSWI relied on any of these exclusions. *See Robert B.*, 2023 WL 7282726, at *21; *infra* § B.4 *see also* Ex. A at 52 (excluding all services not covered). Accordingly, these "exclusions" cannot support a plausible MHPAEA claim.

Likewise, Plaintiffs allegation that "[t]he only Medical Necessity restriction imposed by the Plan on medical/surgical Inpatient Services is a private room vs. a semi-private room" also is contradicted by the plain language of their benefit booklet. Compl. ¶ 87. The Plan separately requires all covered services be medically necessary. Ex. A at 22. Plaintiff alleges the same. Compl. ¶ 20. The only reference in the benefits booklet to a semiprivate versus a private room is that the Plan will not cover a private room at more than the rate of a semiprivate room – which is not a "medical necessity restriction." Ex. A at 47. Moreover, this requirement applies equally to both medical/surgical and mental health services. Plaintiffs' allegation that "only Medical Necessity restriction imposed by the Plan on medical/surgical Inpatient Services is a private room vs. a semi-private room[,]" is therefore not plausible.

As a result, Plaintiffs' allegations are plainly contradicted and do not create a plausible MHPAEA claim.

### 4. Plaintiffs MHPAEA Claim Lacks a Nexus to BCBSWI's Benefits Determination, and Therefore Lack Standing to Bring Their Claim.

Notwithstanding Plaintiffs' purported restrictions and exclusions contradict the Plan terms and should be dismissed for this reason alone, Count II must also be dismissed because Plaintiffs' challenge the Plan's medical necessity criteria lacks a nexus to Plaintiffs' benefits determination. Plaintiffs allege that BCBSWI only applies medical necessity restrictions to mental health claims and that BCBSWI applies "exclusions" that do not appear in the Plan. Compl ¶¶ 87-88. These allegations are not only implausible and cannot support a Parity Act claim (*supra* § B.2), lack any nexus to BCBSWI's benefits determination. To properly state a MHPAEA claim, Plaintiffs must

establish a nexus between the alleged MHPAEA violation and the adverse benefits determination at issue. *Robert B.*, 2023 WL 7282726, at *21; *D.H. v. Blue Cross Blue Shield of Illinois*, No. 2:21CV00334-DAK, 2022 WL 1211515, at *3 (D. Utah Apr. 25, 2022) (unpublished) ("Plaintiffs cannot establish a MHPAEA violation if the alleged disparate limitation on the mental health/substance use disorder treatment is immaterial to the Plans' decision to deny coverage.") (citing *Christine S. v. Blue Cross Blue Shield of N.M.*, 2021 WL 4805136, at *9 (D. Utah Oct. 14, 2021) ) (rejecting MHPAEA claim because there was no nexus "between the [purported] violative language and [the member's] benefits denial.")). A plaintiff cannot establish a MHPAEA violation where the alleged disparate limitation on mental health treatment is immaterial to the plan's decision to deny coverage. *James C. v. Anthem Blue Cross & Blue Shield*, 2021 U.S. Dist. LEXIS 115701, 2021 WL 2532905, at *19 (D. Utah June 2, 2021) (requiring that the benefits determination be material to the MHPAEA claim). Courts dismiss MHPAEA claims with prejudice where there is no nexus between a plaintiff's MHPAEA claim and the benefits determinations. *See, e.g.*, *D.H*, 2022 U.S. Dist. LEXIS 75278, at *9.

The *D.H.* case is instructive. In that case, the court dismissed plaintiffs' MHPAEA claim with prejudice where the MHPAEA allegations challenged a claims administrator's use of medical necessity criteria but "[p]laintiffs have pled no allegations in this case that Blue Cross applied or relied on any medical necessity criteria to make the adverse benefits determination." 2022 U.S. Dist. LEXIS 75278, at *9. Here, Plaintiffs attempt to allege that Defendants violated MHPAEA in the way the Plan applied "Medical Necessity Restriction," and "exclusions." Compl. ¶¶ 87-89. Plaintiffs' allegations, however, undermine their own claim. As alleged, BCBSWI, made clear to Plaintiffs that it denied their claim because Blue Fire did not provide a covered service. Compl. ¶ 13 (BCBSWI explained denied Plaintiffs' claims because it was not covered under the benefits

plan); ¶ 44 (BCBSWI explained to Plaintiffs that Blue Ridge is excluded or not covered); ¶ 59 (explaining wilderness therapy is not a covered service). In other words, because Plaintiffs do not allege a medical necessity denial nor a denial based on one of their listed exclusions, Plaintiffs' MHPAEA claim based on these purported terms (which again, do not exist *supra* § B.2) cannot survive a motion to dismiss. *See D.H.*, 2022 U.S. Dist. LEXIS 75278, at *9 (dismissing MHPAEA claim with prejudice where allegations challenged use of medical necessity criteria).

Without any plausible intersection between an alleged MHPAEA violation Plaintiffs' purported Plan terms and Defendants' claim denials, there was no harm to Plaintiffs and Plaintiffs' MHPAEA claims fail as a matter of law. *See D.H.*, 2022 WL 1211515, at *3 ("Plaintiffs cannot establish a MHPAEA violation if the alleged disparate limitation on the mental health/substance use disorder treatment is immaterial to the Plans' decision to deny coverage.") (citing *James C.*, 2021 WL 2532905, at *19); *Christine S.*, 2021 WL 4805136, at *8–9; *Margaret G.T. v. Oxford Health Plans (NJ), Inc.*, No. 2:20cv211-DBB, 2021 WL 391432, at *2-3 (D. Utah Feb. 4, 2021) (Barlow J., presiding) (unpublished) (dismissing parity claim due to lack of factual allegations about the insurer's conduct regarding the plaintiff, as well as a lack of supporting facts about the comparisons between mental health and medical/surgical benefits that form the basis of the parity claim) (Barlow, J. presiding); *see also Julie L. v. Excellus Health Plan, Inc.*, 447 F. Supp. 3d 38, 58 (W.D.N.Y. 2020) (conclusory allegations are insufficient to sustain a MHPAEA claim); *Richard K. v. United Behavioral Health*, No. 1:18cv6318-GHW, 2019 WL 3080849, at *11-12 (S.D.N.Y. July 15, 2019) (unpublished) (allegations without factual basis to support plaintiffs' claim that that there was a disparate treatment in the way the defendants "handled, processed, or evaluated" claims for mental health treatment in comparison to skilled nursing facilities and inpatient rehabilitation facilities were insufficient to state parity claim).

### 5. Plaintiffs' Remaining MHPAEA Allegations Do Not Save Their Claims.

Plaintiffs' remaining unsupported, conclusory allegations about purported violations of MHPAEA, fail to meet the federal pleading standard and, as a result, Count II warrants dismissal. MHPAEA claims must conform to general pleading standards and cannot stand on implausible or conclusory allegations. *Roy C.*, 2018 WL 4511972, at *3 (plaintiff must plausibly allege a disparity in the limitation applicable to medical/surgical services on the one hand and the mental health services on the other); *Mark C. v. United Healthcare Ins. Co.*, No. 2:20-cv-12, 2021 WL 288578, at *3 (D. Utah Jan. 28, 2021) (dismissing MHPAEA claim noting "[c]onclusory statements and legal conclusions 'couched as a factual allegation' need not be accepted as true in the context of a motion to dismiss and are insufficient to carry a plaintiff's Rule 8 burden."); *Kirsten W. v. Cal. Physicians' Serv.*, No. 2:19-cv-710, 2021 WL 5462180, at *3 (D. Utah Jan. 11, 2021) (same). "Detailed factual allegations are not needed" but the standard "require[s] 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (cited by *C.B. v. Blue Cross*, No. 23-cv-01206, 2024 U.S. Dist. LEXIS 43746, at *3-4 (N.D. Ill. Jan. 9, 2024)).

Plaintiffs' only remaining allegations state in conclusory fashion that the Plan utilizes inappropriate criteria related to medical necessity, geographic location, facility type, provider specialty, to assess mental health claims, but does not use similar criteria to evaluate medical or surgical benefits. *See* Compl. ¶ 86. However, Plaintiffs fail to identify what treatment limitation or criteria they challenge. *See Sevugan*, 931 F.3d at 614. Plaintiffs' allegation does little more than recite the implementing regulations of the Parity Act. *See* 29 C.F.R. § 2590.712(c)(4). Such threadbare allegations are insufficient to state a MHPAEA claim.

In short, the remaining formulaic assertions of the NQTL requirements under MHPAEA and generalized allegations of the use of improper criteria in making benefits determinations, fall far short of the pleading requirements under Rule 12(b)(6). *See* 29 C.F.R. § 2590.712(c)(4)(ii)(H); *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570 (2007) (a complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'")). Accordingly, Plaintiffs' allegations cannot support a claim for a MHPAEA violation, and Count II should be dismissed.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiffs' Complaint with prejudice.

DATED: January 24, 2025                                   Respectfully submitted,

*/s/ Robert C. Deegan*

Robert C. Deegan (IL # 6289338)
REED SMITH LLP
10 South Wacker Drive, Suite 4000
Chicago, IL  60606
Telephone:  (312) 207-1000
Facsimile:  (312) 207-6400
redeegan@reedsmith.com

**Attorney for Defendants**

## CERTIFICATE OF SERVICE

      I hereby certify that on January 24, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service.

<em>/s/ Robert C. Deegan</em>