UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LEO K. and DONNA K., individually and on
behalf of M.L.K.,

    Plaintiffs,

    v.                                                                   Case No. 24-CV-1625

ANTHEM BLUE CROSS BLUE SHIELD,
CASE NEW HOLLAND INDUSTRIAL INC.,
and the CNH INDUSTRIAL U.S. HEALTH
AND WELFARE PLAN,

    Defendants.

---

## DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS COMPLAINT

---

    Leo K. was a participant in his employer's, Case New Holland Industrial Inc., Health and Welfare Benefits Plan (the "Plan"). M.L.K., the minor child of Leo K. and Donna K., received over three months of treatment at Blue Ridge Therapeutic Wilderness ("Blue Ridge"). The Plan denied coverage for M.L.K.'s treatment at Blue Ridge, resulting in Plaintiffs paying over $40,000.00 in out-of-pocket costs.

    Plaintiffs sue for the recovery of benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). (Compl., Docket # 1.) Plaintiffs further assert Defendants violated the Mental Health Parity and Addiction Equity Act ("MHPAEA" or "the Parity Act"), 29 U.S.C. § 1132(a)(3), by allegedly imposing more restrictive treatment limitations on mental health and substance use disorder benefits than those on medical or surgical benefits. (*Id.*) Defendants move to dismiss Plaintiffs' complaint on the ground that it fails to state a claim upon which relief can be granted pursuant to Fed.

R. Civ. P. 12(b)(6). For the reasons further explained below, the Defendants' motion to dismiss is denied.

## BACKGROUND

At all times relevant, Leo K. was employed by Case New Holland Industrial Inc. (Compl. ¶ 3.) Through his employment with Case, Leo K. participated in the company's U.S. Health and Welfare Benefits Plan. (*Id.* ¶ 4.) M.L.K., Leo K.'s minor child, was a dependent and beneficiary of the Plan. (*Id.*) Plaintiffs allege that the Plan is a self-funded group health and welfare benefits plan under ERISA. (*Id.* ¶ 6.) Anthem Blue Cross Blue Shield is the third-party Claims Administrator for the Plan. (*Id.* ¶ 7.)

Plaintiffs allege that M.L.K. received medical care and treatment at Blue Ridge from February 1, 2021 through May 13, 2021. (*Id.* ¶ 11.) Blue Ridge is located in Clayton, Georgia and is licensed to operate as an Outdoor Child Caring Program approved to provide treatment and services to a maximum of 100 children between the ages of 10 and 18 years old. (*Id.* ¶ 12.) In a series of printouts dated December 5, 2022 from Anthem's internal Availity system, Anthem denied Plaintiffs' claims for this treatment in their entirety. (*Id.* ¶ 13.) The "Remark Code" was "00001" with the following description: "This was denied because the service provided is not covered under the member's benefit plan. For the quickest and easiest way to check a member's benefits, from Availity.com, select Patient Registration to run an Eligibility and Benefits Inquiry. As noted, the member is responsible for the unpaid amount." (*Id.*) Plaintiffs allege that the Availity printouts referenced Explanations of Benefits but did not reference any Plan provisions in their denials or identify any exclusion upon which they were based. (*Id.* ¶ 15.)

Plaintiffs submitted a Level One Member Appeal on May 30, 2023. (*Id.* ¶ 16.) Plaintiffs allege that M.L.K.'s treatment at Blue Ridge met all of the requirements of the section entitled "Covered Services" in the Plan. (*Id.* ¶¶ 20–26.) During this appeal, Plaintiffs argued that the Plan wrongfully denied their claim and requested that the Plan's review include a parity analysis to determine whether it was truly being administered in compliance with the MHPAEA. (*Id.* ¶¶ 27–36.) In a letter dated June 16, 2023, Anthem affirmed its denial of Plaintiffs' claim, stating as follows:

> Recently, you or your provider asked us to review a request for the service listed… and the request has not been approved. We'd like to explain why. This service is excluded or not covered under your plan benefits.
>
> Under LIMITATIONS AND EXCLUSIONS section 39, of your benefit booklet on pg 57:
>
> "Excluded forms of therapy include, but are not limited to, primal therapy, chelation therapy, Rolfing, psychodrama, megavitamin therapy, purging, bioenergetic therapy, in-home wrap around treatment, <u>wilderness therapy</u> and boot camp therapy [underline added]
>
> SECOND NATURE BLUE RIDGE is billing for Outdoor/Wilderness Behavioral Healthcare therefore is considered a non-covered service.

(*Id.* ¶¶ 44–45.) Plaintiffs allege that Anthem failed to provide them with the requested parity analysis under the MHPAEA, or provide them with any documentation or information they had requested as part of their Level One Member Appeal that they were legally entitled to receive. (*Id.* ¶ 46.) Plaintiffs allege that Anthem had provided them a copy of the Plan with the June 16, 2023 denial letter; however, the referenced Section 39 exclusion category was "Learning Disability," and page 57 mentioned nothing about exclusions. (*Id.* ¶ 52.) Plaintiffs allege that Anthem's quoting of the benefit booklet's "Limitations and Exclusions" section in the June 16 letter contained language that was not in the Plan that Plaintiffs had. (*Id.* ¶ 51.)

Plaintiffs submitted a Level Two Member Appeal on August 8, 2023. (*Id.* ¶ 47.) The Plan denied Plaintiffs' second appeal in a letter dated September 25, 2023. (*Id.* ¶ 58.) The letter stated, in relevant part:

> We've reviewed your first level appeal. We've gone over everything and have decided to keep our previous coverage decision . . . .
>
> **Our Decision**
> After careful review, the denial of wilderness therapy at Second Nature Blue Ridge for dates of service February 1, 2021 through May 13, 2021, has been upheld. Wilderness therapy is not a covered service under your Case New Holland benefit plan.
>
> On page 56 of your Case New Holland Summary Plan Description, under the heading, Limitations and Exclusions, it states:
>
> Services for outpatient therapy or rehabilitation other than those specifically listed as covered in this Benefit Booklet. Excluded forms of therapy include, but are not limited to, primal therapy, chelation therapy, Rolfing, psychodrama, megavitamin therapy, purging, bioenergetic therapy, in-home wrap around treatment, <u>wilderness therapy</u>, and boot camp therapy." [underline added]

(*Id.* ¶ 59.) Plaintiffs again assert that the Plan they had and relied on in making treatment decisions for their child did not contain an exclusion for wilderness therapy and did not contain the Limitations and Exclusions clause referenced by the Anthem reviewer in the September 25, 2023 denial letter. (*Id.* ¶ 61.) Plaintiffs further allege that Anthem asserted in the second denial letter that the Plan was not subject to potential violations of the MHPAEA due to its self-insured status. (*Id.* ¶ 63.)

## STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint on the basis that the plaintiff has failed to state a claim upon which relief can be granted. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this

4

language to require that the plaintiff plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Ashcroft v. Iqbal*, the Supreme Court elaborated further on the pleadings standard, explaining that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," though this "standard is not akin to a 'probability requirement.'" 556 U.S. 662, 678 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted).

When determining the sufficiency of a complaint, the court should engage in a two-part analysis. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). First, the court must "accept the well-pleaded facts in the complaint as true" while separating out "legal conclusions and conclusory allegations merely reciting the elements of the claim." *Id.* (citing *Iqbal*, 556 U.S. at 680). Next, "[a]fter excising the allegations not entitled to the presumption [of truth], [the court must] determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" *Id.* (citing *Iqbal*, 556 U.S. at 681). As explained in *Iqbal*, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679. All factual allegations and any reasonable inferences must be construed in the light most favorable to the nonmoving party. *Price v. Bd. of Educ. of City of Chicago*, 755 F.3d 605, 607 (7th Cir. 2014).

5

Case 2:24-cv-01625-NJ    Filed 04/22/25    Page 5 of 13    Document 39

## ANALYSIS

Plaintiffs sue under ERISA and the MHPAEA. Defendants move to dismiss Plaintiffs' complaint in its entirety for failure to state a claim. I will address each cause of action in turn.

1. *ERISA Claim (Count One)*

Plaintiffs' first cause of action seeks recovery of benefits under 29 U.S.C. § 1132(a)(1)(B). (Compl. ¶¶ 73–79.) "An improper denial of vested ERISA benefits is the quintessential injury-in-fact supporting a violation of § 1132(a)(1)(B)." *Smith on behalf of Smith v. Health Care Serv. Corp.*, No. 19 C 7162, 2021 WL 963814, at *3 (N.D. Ill. Mar. 15, 2021) (citing *Thole v. U. S. Bank N.A*, 590 U.S. 538, 542 (2020)). The provision "expressly empowers a plan participant or beneficiary to bring a civil action 'to recover benefits due to him under the terms of his plan' (among other, similar relief)." *Id.* (citing 29 U.S.C. § 1132(a)(1)(B)).

The "first and critical allegation in a § 502(a)(1)(B) claim" is that "the plaintiff is a participant or beneficiary entitled to benefits under the terms of an employee-benefits plan." *Brooks v. Pactiv Corp.*, 729 F.3d 758, 764 (7th Cir. 2013). A plaintiff must also identify a provision in the plan that provides for the benefits the plaintiff claims she is entitled to. *LB Surgery Ctr., LLC v. United Parcel Serv. of Am., Inc.*, No. 17 C 3073, 2017 WL 5462180, at *2 (N.D. Ill. Nov. 14, 2017). "Failure to specify the allegedly breached plan term is grounds for dismissal." *Id.* Also, the complaint must "provide the court with enough factual information to determine whether the services were indeed covered services under the plan." *Id.* (internal quotation and citation omitted).

As the Seventh Circuit has stated, an ERISA claim under § 1132(a)(1)(B) is "essentially a contract remedy under the terms of the plan." *Brooks*, 729 F.3d at 764 (internal quotations and citations omitted). And as both parties agree, while a motion under Rule 12(b)(6) is based

on the complaint itself, the court can also consider documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice without converting the motion to one for summary judgment. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). In cases such as this one, where a breach of contract is alleged, the contract itself is a critical document central to the complaint. As the Seventh Circuit noted in *Brooks*, "[s]ometimes plaintiffs attach the relevant plan documents to the complaint as insurance against the risk that the complaint's description of the plan's terms is ambiguous or otherwise deficient." 729 F.3d at 764. In this case, however, Plaintiffs did not do so. Thus, I am "left with the description of the Plan contained in the [ ] complaint." *See id.*

Defendants argue that Plaintiffs are unable to point to any Plan language providing coverage for Blue Ridge's service. (Docket # 38 at 3.) I disagree. Plaintiffs allege that the Plan defines "Covered Services" as follows:

> Covered Services (Expenses) – Services, supplies, or treatment as described in this Benefit Booklet which are performed, prescribed, directed or authorized by a Provider. To be a Covered Service, the service, supply or treatment must be:
>
> • Medically Necessary or otherwise specifically included as a benefit under the Plan;
>
> • Within the scope of the license of the Provider performing the service;
> • Rendered while coverage under the Plan is in force;
>
> • Not Experimental/Investigative or otherwise excluded or limited by this Benefit Booklet, as amended;
>
> • Authorized in advance by the Third Party Administrator if such Prior Authorization is required.

(*Id.* ¶ 20.) Plaintiffs assert that M.L.K.'s treatment at Blue Ridge met all of the requirements of a "covered service" in this section. (*Id.* ¶¶ 21–26.) The crux of Defendants' argument,

7

however, is that the Plan also contains language specifically excluding certain forms of treatment from coverage, including wilderness therapy. Defendants append to their brief what they contend is a true and correct copy of the Plan document effective January 1, 2021. (Declaration of Amanda L. Rickards ¶ 4, Ex. 1, Docket # 31-1.) This document contains a "Limitations and Exclusions" section stating that these "limitations and exclusions apply even if a qualified practitioner has performed or prescribed a Medically Necessary procedure, treatment or supply . . . . Regardless, the procedure, treatment or supply will not be a covered expense." (Docket # 31-1 at 58.) Paragraph 39 excludes:

> Services for outpatient therapy or rehabilitation other than those specifically listed as covered in this Benefit Booklet. Excluded forms of therapy include, but are not limited to, primal therapy, chelation therapy, Rolfing, psychodrama, megavitamin therapy, purging, bioenergetic therapy, in-home wrap around treatment, wilderness therapy and boot camp therapy.

(*Id.* at 60.) In their complaint, however, while Plaintiffs allege that Anthem purportedly invoked this exclusion in their Level Two Denial of Plaintiffs' claim (Compl. ¶ 59), Plaintiffs allege that the cited language is not in the version of the Plan document Plaintiffs have and used when making treatment decisions for their child (*id.* ¶¶ 51, 61). Plaintiffs further allege that Anthem's initial denial of coverage cited no specific Plan provision in support of the denial. (*Id.* ¶ 13.) Plaintiffs allege that it was not until the Level One Denial that Anthem mentions the exclusion for wilderness therapy; however, while the letter purported to cite to a "paragraph 39" in the Plan excluding such therapy, paragraph 39 in the copy of the Plan document Anthem provided with its denial letter was entitled "Learning Disability" and did not address wilderness therapy. (*Id.* ¶¶ 45, 52.)

Given Plaintiffs' allegations in their complaint that the operative Plan document does not contain the language on which Defendants rely in their motion to dismiss, I cannot

consider the version of the document appended to Defendants' brief without converting the motion into one for summary judgment. Again, on a motion to dismiss, I can consider documents that are "critical to the complaint and referred to in it." *Geinosky*, 675 F.3d at 745 n.1. In this case, however, it appears that the Plan document Plaintiffs refer to in their complaint is allegedly *not* the Plan document Defendants include in their motion. For this reason, I cannot consider this document at this juncture. And Plaintiffs' complaint alleges that M.L.K. was a beneficiary of the Plan (Compl. ¶ 4), that the treatment M.L.K. received at Blue Ridge was a "covered service" under the Plan (*id.* ¶¶ 20–26), and that Anthem violated the terms of the Plan by denying coverage for M.L.K.'s treatment (*id.* ¶ 79). Plaintiffs sufficiently allege a cause of action under 29 U.S.C. § 1132(a)(1)(B); thus, dismissal is not warranted at this juncture. Defendants' motion to dismiss Plaintiffs' ERISA claim is denied.

   2.   *MHPAEA Claim (Count Two)*

In their second cause of action, Plaintiffs allege Defendants violated the MHPAEA. The Parity Act is an amendment to ERISA and requires, as a general matter, that "health insurers place coverage for mental conditions on an equal footing with coverage for physical conditions." *Midthun-Hensen on behalf of K.H. v. Grp. Health Coop. of S. Cent. Wisconsin, Inc.*, 110 F.4th 984, 986 (7th Cir. 2024). One way it does this is by requiring that "treatment limitations applicable to . . . mental health or substance use disorder benefits are no more restrictive than the . . . treatment limitations applied to substantially all medical and surgical benefits covered by the plan." 29 U.S.C. § 1185a(a)(3)(A)(ii). The Parity Act accounts for both quantitative and non-quantitative treatment limitations. *Rula A.-S. & M.Q. v. Aurora Health Care & Aurora Health Care, Inc. Health and Welfare Plan*, No. 20-CV-1816, 2021 WL 3116143, at *2 (E.D. Wis. July 22, 2021) (citing 29 C.F.R. § 2590.712(a)).

9

As one court in this district noted, "[w]hen it comes to pleading a case under the MHPAEA, there is no clear law on how to state a claim for a[n] [MHPAEA] violation . . . . As a result, district courts have continued to apply their own pleading standards." *Id.* at *3 (internal quotations and citations omitted). Several general standards have emerged from these cases. One district court found that the "prevailing test" requires Plaintiffs to show:

> (1) the relevant group health plan is subject to the Parity Act; (2) the plan provides both medical/surgical benefits and mental health or substance use disorder benefits; (3) the plan includes a treatment limitation for mental health or substance use disorder benefits that is more restrictive than medical/surgical benefits; and (4) the mental health or substance use disorder benefit being limited is in the same classification as the medical/surgical benefit to which it is being compared.

*Michael W. v. United Behav. Health*, 420 F. Supp. 3d 1207, 1234 (D. Utah 2019). Another court found that to state a claim under the MHPAEA, a plaintiff can:

> (1) allege a facial Parity Act violation, which requires that the plaintiff properly identify, either in the terms of the plan or the administrative record, the relevant treatment limitation supporting that charge; (2) allege a categorical mental-health exclusion without specifying the processes and factors used by a defendant to apply that exclusion—facts that would be solely within a defendant's possession at this stage in the litigation; or (3) allege an impermissible mental-health exclusion in application—as opposed to a facial attack relying solely on the terms of the plan at issue.

*Smith v. Golden Rule Ins. Co.*, 526 F. Supp. 3d 374, 387–88 (S.D. Ind. 2021) (citing *A.Z. by & through E.Z. v. Regence Blueshield*, 333 F. Supp. 3d 1069, 1081–82 (W.D. Wash. 2018)). And yet another court found that:

> To properly plead a Parity Act violation resulting from the denial of the wilderness program's coverage, the first thing Plaintiff must do is correctly identify the relevant limitation . . . . Plaintiff must then allege a flaw in this limitation based on a comparison to a relevant analogue.

*Welp v. Cigna Health & Life Ins. Co.*, No. 17-80237-CIV, 2017 WL 3263138, at *5 (S.D. Fla. July 20, 2017). All of these standards, however, have provoked criticism, specifically concerns

related to a plaintiff's ability to obtain specific information at the pleading stage. *Rula A.-S.*, 2021 WL 3116143, at *3. One district court in this circuit concluded that a plaintiff could state a claim under the MHPAEA by satisfying any one of the various pleading standards discussed above. *Smith*, 526 F. Supp. 3d at 388. The *Smith* court concluded that: "The ultimate question in any Parity Act case is whether the plaintiff has plausibly alleged that his health insurance plan applies a separate or more restrictive treatment limitation to mental health and substance abuse services versus medical and surgical services." *Id.* at 388. The court noted that the different standards "merely provide a framework for considering the question as it relates to the different types of Parity Act violations, including facially disparate treatment, categorical exclusions, and as-applied challenges." *Id.* at 388–89.

Plaintiffs allege that the Plan offered comparable benefits for medical/surgical treatment analogous to the benefits the Plan excluded for M.L.K.'s treatment, including inpatient treatment settings such as hospice facilities and skilled nursing facilities. (Compl. ¶ 85.) Plaintiffs allege that the Plan does not exclude coverage for medically necessary care of medical/surgical conditions based on location, facility type, provider specialty, or other criteria in the manner that Anthem excluded M.L.K.'s treatment at Blue Ridge. (*Id.* ¶ 86.) Plaintiffs further allege that the Plan contains exclusions for behavioral and mental health disorders and substance abuse that are not imposed on medical/surgical benefits and thus imposes more restrictive treatment limitations on mental health conditions. (*Id.* ¶¶ 88–89.)

Defendant argues that Plaintiffs fail to state a Parity Act claim because the "Benefit Booklet is clear that there is no coverage for wilderness therapy regardless of whether that therapy is for medical/surgical or mental health conditions or claims." (Docket # 31 at 12–14; Docket # 38 at 13.) But again, given the parties' dispute over the operative Plan document,

11

I cannot unequivocally rely on this exhibit at the motion to dismiss stage. Defendants further argue that Plaintiffs' MHPAEA claim fails because there is no nexus between the claim and the benefits determination. (Docket # 31 at 14–16.) But Plaintiffs allege that wilderness therapy is analogous to inpatient treatment settings such as hospice facilities and skilled nursing facilities treating medical or surgical conditions; yet Anthem allegedly denied M.L.K.'s treatment claim based on a blanket exclusion for wilderness therapy, which is used primarily to treat mental health conditions. (Docket # 34 at 15–16.)

The ultimate question is whether Plaintiffs have plausibly alleged that the Plan applied a separate or more restrictive treatment limitation to mental health and substance abuse services versus medical and surgical services. *See Smith*, 526 F. Supp. 3d at 388–89. At this juncture, I find that Plaintiffs' complaint sufficiently alleges a claim under the MHPAEA. Defendants' motion to dismiss Count Two is denied.

## CONCLUSION

Plaintiffs allege Defendants improperly denied them benefits under ERISA and violated the MHPAEA. While Defendants assert that Plaintiffs' complaint fails to state a claim upon which relief can be granted, I find that Plaintiffs' complaint sufficiently states a claim under ERISA and the MHPAEA. Thus, dismissal is not warranted under Rule 12(b)(6). Defendants' motion is denied.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that Defendants' motion to dismiss (Docket # 31) is **DENIED**. The clerk will contact the parties to set a Rule 16 scheduling conference in this matter.

Dated at Milwaukee, Wisconsin this 22nd day of April, 2025.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge